**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**SUSAN POTTS**                                                                                  **PLAINTIFF**

**V.**                              **CASE NO.: 2:08CV00097-BD**

**MICHAEL J. ASTRUE,**
   **Commissioner, Social Security Administration**                           **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

Plaintiff Susan Potts appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    Background**

On May 19, 2006, Ms. Potts filed for DIB alleging disability beginning on November 1, 2005, due to back problems.[1] (Tr. 109-110, 122-124) Ms. Potts's claims were denied initially and upon reconsideration. At her request, an Administrative Law Judge ("ALJ") held a hearing on October 23, 2007, at which Ms. Potts appeared with her lawyer. (Tr. 287-310) In a decision dated March 26, 2008, the ALJ found Ms. Potts not disabled, and she appealed. (Tr. 267-275)

---

[1] Although not mentioned in the administrative decision, it appears Ms. Potts also applied for Supplemental Security Income under Title XVI of the Act. (Tr. 119-121)

When Ms. Potts's case reached this Court, the Commissioner requested a remand because the record was incomplete. (docket entry #8) This Court granted the request and remanded the case for further development. (#9)

On October 30, 2008, a second ALJ[2] held a hearing, where Ms. Potts appeared with her attorney. The ALJ heard testimony from Ms. Potts and a vocational expert ("VE"). (Tr. 54-88)

The ALJ issued the second decision on July 29, 2009, finding that Ms. Potts was not disabled for purposes of the Act. (Tr. 40-47) On June 15, 2011, the Appeals Council found that the ALJ's decision was supported by substantial evidence, making the ALJ's decision the Commissioner's final decision. (Tr. 5-6)

Ms. Potts was forty-six years old at the time of the second hearing. (Tr. 65) She was 5'3" and weighed approximately 135 pounds. (Tr. 72) Ms. Potts weighed 189 pounds when her stomach problems began. (Tr. 72-73) She had graduated from high school, and had worked previously as a cashier, office worker, casino hostess, and in retail sales. (Tr. 65-68)

## II. Decision of the Administrative Law Judge

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a

---

[2] The Honorable David Knowles.

severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

The ALJ found that Ms. Potts had not engaged in substantial gainful activity since her alleged onset date. (Tr. 42, 46) And he found that Ms. Potts had the following severe impairments: degenerative disc disease of the spine and hypothyroidism.[4] (Tr. 42, 46) The ALJ found that Ms. Potts did not have an impairment or combination of impairments, however, that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 44-46)

The ALJ determined Ms. Potts had the residual functional capacity ("RFC") to perform a full range of light work.[5] (Tr. 43-46) With this RFC, the ALJ determined that Ms. Potts could perform her past relevant work as a general office clerk, a job she had

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[4] The ALJ found that Ms. Potts's alleged adjustment disorder was not a severe impairment. (Tr. 42-43, 45)

[5] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

performed as a day care secretary and office worker in a transportation company. (Tr. 46-47) Accordingly, the ALJ found that Ms. Potts was not disabled. (Tr. 46-47)

## III. Analysis

### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. *Plaintiff's Arguments for Reversal*

Ms. Potts claims the findings of the ALJ are not supported by substantial evidence because: (1) the ALJ erred in finding that Ms. Potts retained the RFC to perform light work; and (2) the ALJ erred in finding that Ms. Potts's adjustment disorder was not a severe impairment. (#23)

C.  *Residual Functional Capacity*

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citations omitted)  At least some medical evidence must support the ALJ's RFC determination. *Id*.

Ms. Potts argues that the ALJ erred in finding she retained the RFC to perform light work. (#23, p. 23-25)  Ms. Potts alleged that only her back pain and stomach problems prevented her from working. (Tr. 70, 79, 295)  The ALJ noted that Ms. Potts's stomach problems were controlled with medication and did not last twelve months, which is the minimum duration requirement to consider the stomach problem as an impairment. (Tr. 42-43)  20 C.F.R. §§ 404.1509, 416.909.  Ms. Potts does not contest the ALJ's stomach-problem finding, leaving back pain as her only limiting symptom. (#23)

On September 25, 2005, x-rays of Ms. Potts's lumber spine were normal. (Tr. 400)  A lumbar spine MRI reviewed on January 26, 2006, was "relatively benign." (Tr. 206)  A thoracolumbar spine series was unremarkable. (Tr. 209)  John Fox, M.D., thought that Ms. Potts should pursue a gynecological work-up, as a possible cause of her lower back pain. (Tr. 206)  She had no neurological or sensory deficits.  Dr. Fox would not recommend surgery. (Tr. 206)

An MRI completed on February 28, 2008, showed normal lumbar vertebral height and alignment with mild degenerative changes and no neural foraminal narrowing or

nerve root impingement. (Tr. 418-419) A July 3, 2008 MRI showed minimal degenerative disc disease of the cervical spine with no evidence of neural foraminal narrowing. (Tr. 488-489) Ms. Potts's back pain did not appear related to any neurological process. Imaging showed no significant degenerative changes. (Tr. 485)

After reviewing the medical record, two separate disability determination physicians found Ms. Potts's back condition not to be severe. (Tr. 190, 240) The ALJ gave these opinions limited weight as he found evidence that Ms. Potts's back condition was a severe impairment. (Tr. 45)

Ms. Potts complained consistently about back pain. Multiple physical examinations, however, generally showed full joint motion, intact sensation and motor skills, full or normal strength, normal deep tendon reflexes, and normal gait, despite pain. (Tr. 51, 206, 244, 246, 387, 391, 429, 454, 484-485, 497, 516, 529) The primary evidence supporting exertional limitations was Ms. Potts's subjective complaints, which the ALJ found to be less than fully credible.[6] (Tr. 43-44)

The ALJ evaluated Ms. Potts's subjective allegations under the guidelines set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), Social Security Ruling 96-7p, and other relevant authority. He concluded that Ms. Potts's allegations were not fully

---

[6] Ms. Potts appears to acknowledge that her RFC argument rests on the ALJ's credibility determination. In her brief, she notes that her testimony and subjective allegations of pain were essentially the only support for her RFC argument. (#23, p. 23-27)

credible. (Tr. 43-44) The ALJ acknowledged that he was required to consider a number of specific factors when assessing Ms. Potts's credibility. (Tr. 43-44) See *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 968 (8th Cir. 2003) (objective medical evidence, prior work history, daily activities, duration, frequency, and intensity of pain, precipitating or aggravating factors, dosage, effectiveness, and side effects of medication, and functional restrictions are all factors to consider when assessing the credibility of a claimant's subjective allegations).

First, the ALJ considered the medical record. (Tr. 43-44) As noted, objective testing and imaging showed mild degenerative disc disease. (Tr. 206, 209, 400, 418-419, 485, 488-489) Multiple physical examinations evidenced few limitations. (Tr. 51, 206, 244, 246, 387, 391, 429, 454, 484-485, 497, 516, 529)

The ALJ noted that, with proper treatment, Ms. Potts reported a significant decrease in pain. (Tr. 44) On January 30, 2009, after receiving facet joint injections, Ms. Potts reported 100% relief from pain. (Tr. 492) By May, 2009, Ms. Potts's pain had returned and she was taking Amitriptyline, Ibuprofen, and Aleve. (Tr. 50) Despite the pain, she had full joint motion, no spinal deformities, normal deep tendon reflexes, intact sensation and motor skills, and normal station and gait. (Tr. 51) Ms. Potts agreed to try an injection to help her thoracic spine pain. (Tr. 51) She had no side effects from her medications. (Tr. 72)

Ms. Potts had a "variable" work record. (Tr. 44) From 1980 until her alleged disability onset in 2005, Ms. Potts earned no more than $12,500 in any one year. (Tr. 328-333) Mr. Potts testified that Ms. Potts had last worked in April of 2005. (Tr. 65) Earning records, however, evidence some work in 2006. (Tr. 42, 333) In addition, medical records show that Dr. Fox saw Ms. Potts in 2006 for low back pain after a work accident, where she caught a safe that was falling. (Tr. 484)

The ALJ also noted Ms. Potts's activities of daily living. (Tr. 44) Ms. Potts testified that she did not do any activities on a daily basis. (Tr. 75) She would sit on the couch or watch television. (Tr. 76) Ms. Potts testified that she could stand for only fifteen minutes at a time, walk a maximum distance of one room to another, shop for a maximum of twenty minutes before having to sit down, and sit for ten to twenty minutes before having to get up and start moving. (Tr. 76-77) She also indicated that she could stand or walk for one to two minutes and sit for five minutes before pain occurred. (Tr. 147)

Seven months after her alleged disability onset, Ms. Potts stated that she could care for a pet and her personal needs without problem. (Tr. 158) She prepared meals daily, cleaned and did laundry without any help, went outside several times a day, walked or drove, shopped in stores for an hour and a half, and read a lot. (Tr. 159-161) There is no objective medical evidence showing that Ms. Potts's condition worsened after these activities.

Ms. Potts testified that her doctor limited her to lifting no more than ten pounds. (Tr. 76)  In a detailed summary of the medical record, however, Ms. Potts did not cite any records supporting this limitation.  (#23, p. 12-20, 23-25)  The Commissioner was unable to find a ten-pound restriction in the record.  (#24, p. 7)  After a thorough review, this Court was also unable to find a ten-pound restriction in the record.[7]  The only physician-recommended restriction appears to be a temporary, 24-hour limitation regarding "heavy lifting or strenuous activity" after facet joint injections.  (Tr. 512)  Clearly, this 24-hour restriction falls well short of any durational requirement.  In addition, multiple examinations showed that Ms. Potts retained normal extremity strength.  (Tr. 244, 246, 387, 391, 429, 484, 516)

The ALJ also noted that Ms. Potts was able to attend school four days per week. (Tr. 44)  Ms. Potts argues that considering her school attendance was error, since she withdrew from school in 2006.  (#23, p. 24)  She testified that she did not last through summer school.  (Tr. 304)

Ms. Potts alleged complete disability starting on November 1, 2005.  (Tr. 109, 122)  She reported on June 3, 2006, that she regularly attended school, four days a week, from 10:00AM to 2:30PM.  (Tr. 157, 161)  Records show that Ms. Potts attended school for the Spring 2006 semester, which began in January 2006, and two summer semesters,

---

[7] The Commissioner specifically requested a description from Ms. Potts's medical providers regarding her ability to lift, but received no such description.  (Tr. 167-168)

beginning May 2006 and July 2006.  (Tr. 36-38)  This period of school attendance clearly occurred during the time Ms. Potts claimed complete disability.  There is no objective medical evidence showing that Ms. Potts's condition worsened after the school attendance.  Accordingly, there was no error in the ALJ's consideration of school attendance during this time.

The ALJ may discount subjective complaints if there are inconsistencies in the record as a whole.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).  In this case, the ALJ gave good reasons for discounting Ms. Potts's more extreme subjective complaints.  The credibility findings are entitled to deference because they are supported by substantial evidence in the record.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Even if the ALJ had credited all but Ms. Potts's most extreme alleged limitations, she could still perform at least sedentary work with an option to stand at will.[8]  The VE testified that an individual of the same age, with the same education and work experience as Ms. Potts, who is limited to sedentary work with the option to stand at will, could perform the jobs of payroll clerk, billing and posting clerk, watch crystal attacher, and lamp shade assembler.  (Tr. 85-86)

---

[8] There is overwhelming evidence in the medical record that Ms. Potts could at least perform sedentary work with an option to stand at will.

As it stands, Ms. Potts failed to prove that she could not perform her past relevant work. The ALJ's RFC determination was supported by substantial evidence. Ms. Potts's more extreme subjective allegations were not credible.

D.     *Severe Impairments*

Ms. Potts argues that the ALJ erred by finding her adjustment disorder "nonsevere." (#23, p. 25-26) A "severe" impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992). "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; and mental or nonexertional functions such as capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in work routine. 20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ discussed Ms. Potts's alleged adjustment disorder before finding it not to be severe. (Tr. 42-45) The ALJ noted that Ms. Potts sought treatment at Counseling Services of Eastern Arkansas in May 2007. (Tr. 43, 378-384) She had lost four family members in the prior year. (Tr. 378) A social worker, Sandra Giddens, gave Ms. Potts a Global Assessment of Functioning score of 58 and diagnosed her with adjustment

disorder.[9]  (Tr. 384)  Ms. Potts attended counseling sessions with Ms. Giddens on June 2, 2007, and June 18, 2007.  (Tr. 376-377)  There are no other records showing that Ms. Potts sought or received treatment for an adjustment disorder.

     This medical evidence raises serious questions about Ms. Potts's argument that her alleged adjustment disorder was a serious impairment.  Was she ever diagnosed by an acceptable medical source?  See 20 C.F.R. §§ 404.1513(a)(1)-(5), (d)(1)-(4); 416.913(a)(1)-(5), (d)(1)-(4) (social worker not listed among acceptable medical sources who can provide evidence to establish an impairment; instead, social worker qualified as "other source" who could provide evidence of the severity of an impairment).  If she was, the record does not appear to evidence the diagnosis.

     With three clinic visits over a span of one month, is there any evidence that the alleged adjustment disorder lasted at least 12 months?  See 20 C.F.R. §§ 404.1509, 416.909 (unless the impairment is expected to result in death, it must have lasted for a continuous 12 month duration).  Outside of this one month period, there are no records regarding treatment or diagnosis for adjustment disorder.

     Even if Ms. Potts could satisfy the durational and evidentiary requirements, she testified that her adjustment disorder did not affect her ability to work which, by definition, would mean it was not severe.  At the first administrative hearing, Ms. Potts

---

[9] It appears a physician reviewed Ms. Giddens's assessment at a later date, but there is no record Ms. Potts ever saw the physician.  (Tr. 383)  Ms. Potts confirmed that Ms. Giddens made the adjustment disorder diagnosis.  (#23, p. 16)

testified that back pain only, and nothing else, caused her inability to work. (Tr. 295) At the second hearing, she testified that she had no problems other than back and stomach issues. (Tr. 70) Asked again by her attorney if anything besides back pain and stomach problems would prevent work, she said no. (Tr. 79)

Because Ms. Potts's alleged adjustment disorder did not significantly limit her ability to do basic work activities, it was not severe. The ALJ's finding in this regard is supported by substantial evidence in the record. Accordingly, the ALJ did not err in finding that Ms. Potts's adjustment disorder was "nonsevere."

## IV.     Conclusion

The Court has reviewed all of the evidence in the record, including all of the medical evidence and the hearing transcripts. There is sufficient evidence in the record to support the Commissioner's determination that Susan Potts retained the residual functional capacity to perform past relevant work or other jobs existing in significant numbers in the economy. Accordingly, her appeal is DENIED. The Clerk is directed to close the case.

IT IS SO ORDERED this 20th day of June, 2012.

_____
UNITED STATES MAGISTRATE JUDGE